**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**TRAVIS T. WILLIAMS, #Y15910,**

                **Plaintiff,**

**v.**                                           **Case No. 19-cv-1192-NJR**

**ZACHARIAH BUCHANAN,**
**and JUSTIN ECKELBERRY,**

                **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

      This matter is before the Court on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 31, 32). Defendants notified Plaintiff Travis T. Williams of the consequences of failing to respond to the motion (Doc. 33), and Williams's response was due September 24, 2020. However, Williams failed to file a timely response or any response at all as of today's date. The Court considers Williams's failure to respond an admission of the facts of Defendants' motion. SDIL Local Rule 7.1(c). *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no undisputed material facts).

### BACKGROUND

      On October 30, 2019, while incarcerated at Lawrence Correctional Center ("Lawrence") of the Illinois Department of Corrections ("IDOC"), Williams filed his Complaint pursuant to 42 U.S.C. § 1983. He alleges Defendants used excessive force against him on February 27, 2019. (Doc. 1). Williams was released from IDOC custody on November 26, 2019. (Doc. 31, p. 1).

Case 3:19-cv-01192-NJR   Document 34   Filed 02/10/21   Page 2 of 12   Page ID #145

Specifically, Williams alleged that he was handcuffed during a shakedown and taken to the dietary unit. When he complained that the cuffs were cutting off his circulation, Defendants threw him to the floor and beat him, causing him to lose consciousness twice. Williams was disciplined with segregation and a loss of good conduct credit after being found guilty of assault, dangerous disturbances, and disobeying a direct order in connection with the incident. (Doc. 1, pp. 6, 10). He was allowed to proceed on the following claim:[1]

Count 1:     Eighth Amendment claim against Buchanan and Eckelberry for using excessive force against Williams on or around February 27, 2019.

Defendants argue that Williams failed to exhaust his administrative remedies prior to filing suit. In particular, he failed to resubmit grievances at the institutional level that he had submitted as emergency grievances but were deemed not to be an emergency; he failed to appeal them properly to the Administrative Review Board ("ARB"); and he failed to otherwise follow Department Rule 504. (Doc. 31, pp. 1-2). The relevant grievances are set forth as follows:

**Grievance 3-19-2, dated February 28, 2019**:

Williams submitted this grievance as an emergency, claiming that Buchanan and Eckelberry used excessive force against him on February 27, 2019 during the shakedown and seeking a "Temporary Order of Protection" against them because he feared for his life. (Doc. 32-1, pp. 8-9). On March 4, 2019 the CAO deemed it not to be an emergency; that section of the grievance form instructed Williams to "submit this grievance in the normal manner." (Doc. 32-1, p. 8). The ARB received this grievance on April 23, 2019, along with two others.

---

[1] Four other counts were dismissed at preliminary screening. (Doc. 9, p. 7).

(Doc. 32-1, p. 6). The next day, the ARB instructed Williams to provide the original counselor's response as well as the grievance officer's and CAO's response. *Id.* According to IDOC's Cumulative Counseling Summary, Williams submitted this grievance and five others to the Lawrence grievance office on May 13, 2019. (Doc. 32-3, p. 3). On May 15, 2019, the grievance officer recommended denial of the grievance as one of five grievances deemed to be duplicates of Grievance 3-19-202, and the CAO concurred. (Doc. 32-2). A separate memorandum also dated May 15, 2019, informed Williams that six grievances including this one were deemed to be duplicates.[2] (Doc. 32-1, p. 5). The ARB received this grievance again along with several others on May 23, 2019, but returned them to Williams on May 28, 2019, because he had failed to comply with Department Rule 504 subpart F (which requires the inmate to submit the original grievance responses from the counselor, grievance officer, and CAO), and because the matter had previously been addressed. (Doc. 32-1, p. 2; Doc. 32-4, pp. 3-4).

**Grievance 3-19-202, dated March 12, 2019**:

Williams also submitted this grievance as an emergency, claiming that Buchanan and Eckelberry wrote a false disciplinary ticket on him on February 27, 2019. (Doc. 32-1, pp. 10-11). As relief, he asked to be transferred to another prison because he was in fear for his life. On March 15, 2019, the CAO determined it was not an emergency. (Doc. 32-1, p. 10; Doc. 32-3, p. 4). On April 23, 2019, the ARB received the grievance along with several others and rejected them on the next day because Williams had not provided copies of the grievance officer's and CAO's response. (Doc. 32-1, p. 7). On May 13, 2019, Williams submitted the

---

[2] The grievances found to be duplicates of 3-19-202 were 3-19-2, 3-19-236, 3-19-237, 3-19-415, and 3-19-436. (Doc. 32-1, p. 5).

grievance to the grievance office (Doc. 32-3, p. 3). On May 15, 2019, it was denied along with others (including Grievance 3-19-2 above) deemed to be its duplicate. (Doc. 32-2; Doc. 32-3, p. 3). On May 23, 2019, the ARB received the resubmitted grievance along with several others. (Doc. 32-1, p. 2). On May 28, 2019, it again refused review because Williams failed to include the original grievance responses from the counselor, grievance officer, and CAO. *Id.*

**Grievances 3-19-236 and 3-19-237, dated March 18, 2019**:

Williams submitted both of these grievances as emergencies. (Doc. 32-1, pp. 12-13). Based on the February 27, 2019, attack on him and false disciplinary charges, Williams again requested a transfer and "Keep Separate From" orders against Buchanan and Eckelberry. On March 20, 2019, both were deemed not to be emergency matters. *Id.* On April 23, 2019, the ARB received these grievances along with the February 28, 2019 grievance (3-19-2); all were rejected the next day because Williams had not provided copies of the grievance officer's and CAO's response. (Doc. 32-1, p. 6). On May 13, 2019, Williams submitted these grievances to the grievance office (Doc. 32-3, p. 3). These two grievances were included in the May 15, 2019, group denial of grievances found to be duplicates of Grievance 3-19-202. (Doc. 32-2; Doc. 32-3, p. 3). On May 23, 2019, the ARB received them again, along with other grievances (including Grievance 3-19-202 of March 12, 2019) and again rejected them for lack of the original grievance responses. (Doc. 32-1, p. 2).

**Grievance 5-19-272, dated April 23, 2019**:

Williams submitted this emergency grievance directly to the ARB, which received it on May 1, 2019. (Doc. 1, pp. 13-14; Doc. 32-1, pp. 20-21). In it, he sought an emergency restraining order against Buchanan and Eckelberry because he feared for his life after the February 2019 beating and subsequent disciplinary action, stating he was soon to be released

from segregation. On May 3, 2019, the ARB returned it to Williams with instructions to provide his original grievance and responses from the counselor, grievance officer, and CAO. (Doc. 1, p. 18; Doc. 32-1, p. 17). On May 17, 2019, the grievance was received by the grievance office, and it was deemed an emergency by the warden. (Doc. 1, p. 15; Doc. 32-3, p. 3). But it was returned to Williams with a memo noting it was a duplicate to Grievance 3-19-202. (Doc. 32-3, p. 3).[3] Williams did not resubmit the grievance to the ARB. (Doc. 32, p. 5; Doc. 32-4, pp. 3-4).

Defendants' exhibits also include copies of Grievance 3-19-415, dated March 25, 2019, and Grievance 3-19-436, dated March 26, 2019. (Doc. 32-1, pp. 14-16). Both concerned Williams's disciplinary report and are not relevant to the matter of exhaustion of remedies for his excessive force claim. The record indicates that they also were unexhausted.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438

---

[3] This memo is not included in the record but is merely referenced in the Cumulative Counseling Summary. (Doc. 32-3, p. 3, entry dated 5/21/2019).

F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any

of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

**Illinois Exhaustion Requirements**

As an IDOC inmate, Williams was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO") within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id*.

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after

receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an

emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

The grievance officer determined that all of Williams's grievances referencing the shakedown incident on February 27, 2019 (Grievances 3-19-2, 3-19-236, 3-19-237, and 5-19-272) were duplicates of Grievance 3-19-202. That is correct as to the relief sought by Williams in each grievance—protective orders from Defendants and a transfer for his safety. However, Williams's factual descriptions of the grounds for the several grievances are not identical. His earliest-filed grievance (3-19-2) described the excessive force by Defendants on February 27, 2019, which included ramming Williams's head into a wall, hitting him with a stick, and kicking and choking him. (Doc. 32-1, p. 9). The next grievance (3-19-202, filed March 12, 2019) focused on Williams's allegation that the disciplinary charges against him based on the incident were falsified; this grievance contained no description of the alleged assault on him. The March 18, 2019, grievances (3-19-236 and 3-19-237) repeated Williams's requests for protection from the officers but included no factual description beyond the statements that he was attacked during the shakedown and placed in segregation under false charges. (Doc. 32-1, pp. 12-13). The last grievance at issue (5-19-272, filed April 23, 2019) set forth the details of Williams's beating at the hands of Defendants, as well as the claim of false disciplinary charges. (Doc. 32-1, pp. 20-21).

Grievances 3-19-2 and 5-19-272 placed prison officials on notice of the excessive force claims set forth in Count 1 of Williams's civil rights Complaint. But Defendants have shown that Williams failed to submit the institutional response to his grievances to the ARB as he was required to do so that body could complete its review, thus he failed to exhaust his

available administrative remedies before filing suit.

When the CAO deemed that Williams's initial emergency grievance of February 28, 2019 (Grievance 3-19-2) was not an emergency, Williams did not immediately submit it through the regular channels to the counselor and grievance officer at Lawrence as the grievance form instructed. Instead, it appears that he sent it directly to the ARB, which rejected it because he did not include responses from the grievance officer and other officials. (Doc. 32-1, p. 6). Only on May 13, 2019, did Williams submit the grievance to the Lawrence Grievance Office. The grievance officer rejected it in the Grievance Officer's Report dated May 15, 2019, as a duplicate of Grievance 3-19-202 (which complained about the disciplinary ticket), and the CAO concurred. (Doc. 32-2). Defendants assert that Williams did not include this Report when he resubmitted Grievance 3-19-2 to the ARB on or about May 23, 2019, and Williams has not disputed the point. The record indicates that Williams did send the grievance officer's separate May 15, 2019, memorandum to the ARB, which is file-stamped as received by the ARB on May 23, 2019 (Doc. 32-1, pp. 3-5). But that memo merely listed the six grievances that were determined to be duplicates and did not set forth the grievance officer's findings or disposition of the grievances, nor did it include the CAO's determination. The Court concludes that Williams did not properly exhaust the administrative review of Grievance 3-19-2.

Likewise, Williams failed to exhaust the other grievance which set forth his allegations of excessive force; Grievance 5-19-272, which he submitted as an emergency directly to the ARB on April 23, 2019. (Doc. 32-1, pp. 20-21). The ARB returned it to Williams, it was submitted to the grievance office, and deemed an emergency. When it was found to be a duplicate of Grievance 3-19-202 and returned to Williams, he took no further steps to appeal

it. Grievance 5-19-272 remains unexhausted.

The other grievances, 3-19-202, 3-19-236, and 3-19-237, which focused on the allegedly false disciplinary charges, were similarly unexhausted. The May 15, 2019, Grievance Officer's Report denying Grievance 3-19-202 (Doc. 32-2), along with the other grievances found to be duplicates, was never sent to the ARB by Williams. Having failed to submit that Report for the ARB's review, Williams did not follow the ARB's rules and his appeals were properly rejected by that body. *See Dole*, 438 F.3d at 809. Because Williams failed to follow the administrative appeal process to completion for any of the relevant grievances, Defendants are entitled to summary judgment for his failure to exhaust.

## CONCLUSION

Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 31) is **GRANTED,** and this entire action is **DISMISSED without prejudice** for Williams's failure to exhaust his administrative remedies. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

If Williams wishes to appeal the dismissal of this case, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(a)(1)(A). If Williams does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and

this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED:   February 10, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**